UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**17 M 620**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against –

FRANCISCO MELENDEZ-PEREZ,
    also known as "Mojarra,"
FABIAN REYES-ROJAS and
ABEL ROMERO-MELENDEZ,
    also known as "Borrega,"

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**TO BE FILED UNDER SEAL**

C O M P L A I N T

EASTERN DISTRICT OF NEW YORK, SS:

        I, Patrick Jochum being first duly sworn, hereby depose and state as follows:

        In or about and between 2010 and 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FRANCISCO MELENDEZ-PEREZ, together with others, did knowingly and intentionally recruit, entice, harbor, transport, provide, obtain and maintain by any means a person, in and affecting commerce, knowing and in reckless disregard of the fact that means of force, fraud and coercion, and a combination of such means, would be used to cause the person to engage in one or more commercial sex acts, and knowing and in reckless disregard of the fact that the person had not attained the age of 18 years and would be caused to engage in one or more commercial sex acts.

        (Title 18, United States Code, Sections 1591(a)(1) and 3551 et seq.)

1

In or about and between 2015 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FABIAN REYES-ROJAS and ABEL ROMERO-MELENDEZ, aliens who had previously been removed from the United States, were found in the United States, without the Attorney General or the Secretary of the United States Department of Homeland Security having expressly consented to such aliens' applying for admission.

(Title 8, United States Code, Sections 1326(a); Title 18, United States Code, Sections 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:

1.     I have been a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI") since June 2016. I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for transnational sex and human trafficking and related offenses. In that capacity, I have participated in investigations involving the debriefing of sex trafficking victims, review of telephone records and GPS data, review of money transfer records, surveillance, analysis of pen register information, and various other techniques. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

2.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Because the purpose of this affidavit is limited to demonstrating probable cause for the defendants'

2

arrest, it does not set forth all of my knowledge about this matter. In addition, when I rely on statements made by others, such statements are set forth only in part and in substance unless otherwise indicated.

A.    Background

3.    In March 2014, law enforcement officers initiated an investigation into a sex trafficking organization operated by members of the Melendez-Rojas family. As part of the investigation, agents have physical surveillance and analysis of numerous types of records, including telephone records and financial records. The investigation shows, in part, that the defendants FRANCISCO MELENDEZ-PEREZ, FABIAN REYES-ROJAS and ABEL ROMERO-MELENDEZ are all unlawfully present in the United States, with FABIAN REYES-ROJAS and ABEL ROMERO-MELENDEZ having reentered the country after being removed. In addition, the investigation shows that the Melendez-Rojas sex trafficking organization has brought females to the United States to work in prostitution, including one or more minor females, who were required to engage in commercial sex acts. As part of the investigation, my fellow law enforcement officers interviewed one such female, who was smuggled into the United States and forced into prostitution ("Jane Doe #1"). She provided the following information, in substance and in part.[1]

4.    In approximately May 2010, Jane Doe #1 met the defendant FRANCISCO MELENDEZ-PEREZ ("FRANCISCO") in Tecamachalco, Mexico, and shortly thereafter began dating him. Approximately two weeks later, Jane Doe #1 moved in

---

[1] HSI has made a successful application to adjust Jane Doe #1's immigration status to continued presence, and provided her with work authorization. As set forth herein, in part, the information provided by Jane Doe #1 has been corroborated in various ways by other sources of information, including information provided by additional victims.

with FRANCISCO at his residence in Tenancingo, Mexico. Prior to moving in with FRANCISCO, Jane Doe #1 informed FRANCISCO that she was only 14 years old. While in Mexico, Jane Doe #1 met FRANCISCO's mother, who she knew as "Ma Ana Perez-Rojas."

6.  In July 2010, FRANCISCO informed Jane Doe #1 that they were going to travel to the United States to find work, but FRANCISCO did not specify what type of work. Jane Doe #1 agreed to travel to the United States, in part, because she wanted to escape from family members who had inflicted serious harm on her.

7.  FRANCISCO, together with his family members, subsequently hired smugglers, or "coyotes" to smuggle Jane Doe #1, FRANCISCO and FRANCISCO's aunt into the United States. United States Border Patrol agents caught Jane Doe #1, FRANCISCO and his aunt on two occasions at the border and they were voluntarily returned to Mexico. Prior to their being stopped by Border Patrol Agents, FRANCISCO told his aunt, in substance, that she should give the authorities a name and date of birth for Jane Doe #1 that would not reveal that she was a minor. At the end of October 2010, they successfully crossed the border into Arizona and were transported to New York by coyotes.

8.  Jane Doe #1 explained that they were dropped off in the Bronx. FRANCISCO's uncle picked them up in a livery cab and a driver transported them to Queens, New York. Jane Doe #1 and FRANCISCO thereafter moved into an apartment in Queens (the "Queens Residence") with FRANCISCO's uncle and his wife.

9.  Shortly after arriving in New York, FRANCISCO informed Jane Doe #1 that she would have to work as a prostitute. Jane Doe #1 initially refused to work as a prostitute, but FRANCISCO repeatedly told her that she did not speak English or have any papers that would allow her to work. FRANCISCO also threatened Jane Doe #1 that if she

4

ran away, she would be arrested and deported. Feeling that she had no other choice, Jane Doe #1 thereafter began to work as a prostitute.

          10.     Jane Doe #1 told FRANCISCO numerous times that she did not want to work as a prostitute, but he forced her to do so any way. FRANCISCO also threatened to kill her family if she stopped working as a prostitute. Jane Doe #1 was never allowed to be alone in the Queens Residence or leave the Queens Residence by herself.

          11.     On or about April 15, 2014, Jane Doe #1 ran away from the Queens Residence and rented a room in a house in Queens. After Jane Doe #1 informed the land lady of her situation, the land lady advised her to go to the police.

          12.     Upon speaking with law enforcement officers, Jane Doe #1 was shown photographs of several individuals. Jane Doe #1 identified defendant FABIAN REYES-ROJAS ("FABIAN") in one of the photographs as a cousin of FRANCISCO's and in context, as a member of the sex trafficking organization. She also identified a photograph of another female, Jane Doe #3, as an individual who worked for FABIAN as a prostitute. Jane Doe #1 has also noted that Jane Doe #3 and FABIAN lived with her and the others in the Queens Residence.

        B.     Telephonic & Documentary Evidence

          13.     Based on information gathered during the course of the investigation, agents of the Department of Homeland Security have analyzed phone records, wire transfer records, various documentary evidence and border crossing records. Based on that analysis, agents have determined that the defendants FRANCISCO MELENDEZ-PEREZ, FABIAN REYES-ROJAS ("FABIAN") and ABEL ROMERO-MELENDEZ ("ABEL") are all present in the United States, with FABIAN and ABEL having reentered after previously being

removed. A summary of some of the information contained in those records is detailed

below.

a.    Border Crossing & Immigration Records

14.    Border crossing records maintained by Customs and Border Protection

show that Border Patrol Agents stationed in Nogales, Arizona encountered FRANCISCO on

July 18, 2010, and he was voluntarily returned to Mexico. In the same group, Border Patrol

Agents also discovered FRANCISCO's aunt, as well as an individual with the first name of

Jane Doe #1, but represented to the Border Patrol Agents as having the last name "Melendez-

Rojas," with a false date of birth that concealed that Jane Doe #1 was a minor. In addition,

border crossing records reveal that Border Patrol Agents stationed in Nogales, Arizona again

encountered FRANCISCO on July 24, 2010, and he was voluntarily returned to Mexico. In

the same group of travelers, Border Patrol Agents also discovered FRANCISCO's aunt, as

well as an individual with the first name of Jane Doe #1, but represented to the Border Patrol

Agents as having the last name "Melendez-Rojas," with a false date of birth that concealed

that Jane Doe #1 was a minor. Notably, the dates of birth presented for Jane Doe #1 on July

18 and July 24, 2010, were slightly different. On both occasions, the Border Patrol Agents

returned Jane Doe #1 and FRANCISCO's aunt to Mexico.

15.    Immigration records reveal that FABIAN REYES-ROJAS was

encountered and voluntarily returned to Mexico on multiple occasions, including March 11,

2003, March 14, 2003, March 16, 2003, March 18, 2003, September 7, 2007 and September

13, 2007. Border Patrol Agents again encountered FABIAN on September 8, 2011 near

Nogales, Arizona. In a sworn statement provided to the Border Patrol Agents following the

stop on September 8, 2011, FABIAN admitted, in substance and in part, that he was traveling

with his life partner, Jane Doe #3, to Queens, New York, where he had previously lived for two years. Following the September 8, 2011 encounter, FABIAN was formally removed from the United States on September 9, 2011.

16. Thereafter, on or about May 16, 2012, FABIAN was again found in the United States near Douglas, Arizona, and arrested for his illegal reentry. FABIAN was then charged in a criminal complaint, in the District of Arizona, with Illegal Reentry After Deportation, in violation of 8 U.S.C. § 1326(a) and with a charge of Alien Eluding Examination and Inspection by Immigration Officers, in violation of 8 U.S.C. § 1325. On May 18, 2012, the defendant pled guilty, pursuant to a written plea agreement, to the Alien Eluding Examination charge and he was sentenced to 30 days of imprisonment. On June 16, 2012, members of the Department of Homeland Security again formally removed FABIAN REYES-ROJAS from the United States pursuant to a warrant for his deportation/removal.

17. Border crossing records maintained by Customs and Border Protection show numerous encounters of the defendant ABEL ROMERO-MELENDEZ in the vicinity of the United States-Mexico border, including:

a. Border crossing records maintained by Customs and Border Protection show that Border Patrol Agents stationed in Casa Grande, Arizona encountered ABEL on March 22, 2002, and he was voluntarily returned to Mexico.

b. Border crossing records maintained by Customs and Border Protection show that Border Patrol Agents stationed in Nogales, Arizona encountered ABEL on July 14, 2006, and he was voluntarily returned to Mexico.

7

    c.    Border crossing records maintained by Customs and Border Protection show that Border Patrol Agents stationed in Sasabe, Arizona encountered ABEL on July 21, 2006, and he was voluntarily returned to Mexico.

    d.    Border crossing records maintained by Customs and Border Protection show that Border Patrol Agents stationed in Nogales, Arizona encountered ABEL on July 25, 2006, and he was voluntarily returned to Mexico.

    e.    Border crossing records maintained by Customs and Border Protection show that Border Patrol Agents stationed in Tucson, Arizona encountered ABEL on approximately July 30, 2006, and he was voluntarily returned to Mexico.

    f.    Border crossing records maintained by Customs and Border Protection show that Border Patrol Agents stationed at a border patrol station in the Tucson, Arizona sector encountered ABEL on June 4, 2012 and he was processed for expedited removal to Mexico, which occurred on June 5, 2012.

    g.    Border crossing records maintained by Customs and Border Protection show that Border Patrol Agents stationed in Willcox, Arizona encountered ABEL on June 15, 2012 and he was processed for expedited removal to Mexico, which occurred on June 18, 2012.

    h.    Border crossing records maintained by Customs and Border Protection show that Border Patrol Agents stationed in Falfurrias, Texas encountered ABEL on October 29, 2012.

    18.    Following his October 29, 2012 arrest, members of the Department of the Homeland Security again formally removed ABEL ROMERO-MELENDEZ from the United States pursuant to a warrant for his deportation/removal on October 30, 2012.

8

19.     A search of Department of Homeland Security records has revealed that the defendants, FABIAN REYES-ROJAS and ABEL ROMERO-MELENDEZ, have not received permission from either the Attorney General or the Secretary of the Department of Homeland Security to re-renter the United States after removal.

20.     Telephonic and documentary evidence demonstrates that FABIAN REYES-ROJAS and ABEL ROMERO-MELENDEZ have again returned to, and are presently in, the United States.

b.     Additional Telephonic & Documentary Evidence

21.     First, records received from T-Mobile indicate that a telephone assigned number (980) 202-9766 (the "9766 number") was activated in November 2015 by subscriber "Abel Romero." The T-Mobile records list the subscriber's date of birth for the 9766 number as 8/5/86. According to border encounter records, ABEL's date of birth is August 5, 1986. In addition, GPS and cell-site simulator data collected pursuant to search warrants dated April 14, 2017 and April 21, 2017, respectively, showed that another telephone associated with a number subscribed to ABEL, (917) 480-7517 (the "7517 number"), spends time in and travels between Queens, New York and Charlotte, North Carolina. In addition, from April 1, 2017 to June 12, 2017, the 9766 number was in contact with ABEL's 7517 number more than any other number. In fact, the 7517 number associated with ABEL was in contact with the 9766 number approximately 497 times. In context, and based on my training and experience, it thus appears that ABEL subscribed to two phones, one of which is being used by another individual. Based on my training and experience, it is common for traffickers and pimps to stay in near constant contact with females working for them as prostitutes in an effort to exert control over them.

9

22.     In addition, the investigation has revealed that the defendant ABEL

ROMERO-MELENDEZ listed the 7517 number on an apartment lease in his and a female's

name in Charlotte, North Carolina (referred to herein as the "female lessor"). The apartment

lease, renewed on May 4, 2017, lists the same date of birth for ABEL as on border encounter

records, as well as the 7517 number. The female lessor's name on the lease is, in turn,

associated with the 9766 number on the apartment lease agreement. The 9766 number is

associated with a Facebook account with a very similar name as that of the female lessor,

with photographs that appear to be of the female lessor, based on border encounter records.

Further, wire transfer records show a wire transfer to Mexico on February 19, 2017, that lists

the female lessor as the sender with the 9766 number and her correct date of birth, based on

border encounter records. The female lessor also lists that date of birth on the apartment

lease agreement discussed above.

23.     Based upon a review of the 7517 number associated with ABEL

ROMERO-MELENDEZ, the 7517 number was also in contact with a telephone assigned

number (917) 251-7458 (the "7458 number") 7458 number, by calling or texting,

approximately 445 times from April 4, 2017 to June 10, 2017. In addition, wire transfer

records show that wire transfers in the name of another female ("Jane Doe #5") reflect

telephone numbers associated with individuals she is wiring money to in Mexico and

California who appear to be her relatives, most of whom share her last name. Toll records

for the 7458 number also show that the 7458 number has called or sent text messages to the

numbers believed to be associated with Jane Doe #5's relatives on a regular basis. Notably,

the 7458 number had the second-highest call frequency during that time period with the 7517

number, after the calls and texts with the female lessor. Based on toll records obtained from

10

T-Mobile, the top number called or text messaged by the 7458 number from April 1, 2017 to June 30, 2017 is ABEL's 7517 number. Based on my training and experience, and in context, there is cause to conclude that ABEL has been in close contact with two females in the United States, one of whom is in Charlotte, North Carolina and one of whom is in Queens, New York. As stated above, based on my training and experience, it is common for traffickers and pimps to stay in near constant contact with females working for them as prostitutes so as to exert control over them.

24. In addition, the evidence shows that a telephone assigned number (646) 407-9073 (the "9073 number") is being used by the defendant FABIAN REYES-ROJAS in the United States. Specifically, the 9073 number is associated with a Facebook profile under the name "Fabian Feyes," which features a photograph. The person depicted in the Facebook photograph closely resembles the individual who was encountered by the United States border patrol on May 17, 2012, who was identified as the defendant FABIAN. As noted above, Jane Doe #1 also identified the individual in the border encounter photograph as FABIAN.

25. On April 14, 2017, the government applied for and received authorization for the collection of Global Positioning System ("GPS") on four telephones, including (929) 305-4256 (the "4256 number"), (929) 305-4259 (the "4259 number"), (917) 480-7517 and (646) 407-9073.[2] In addition, the government applied for and received

---

[2] The government hereby provides notice, pursuant to Federal Rule of Criminal Procedure 41(f)(2)(C), to the users of these four telephones, believed to be the defendants FRANCISCO MELENDEZ-PEREZ, FABIAN REYES-ROJAS and ABEL ROMERO-MELENDEZ, of the use of GPS tracking and a cell-site simulator pursuant to search warrants issued on April 14, 2017 by the Hon. Cheryl L. Pollak, U.S.M.J., April 21, 2017, by the Hon. Peggy Kuo, U.S.M.J., and on July 10, 2017 by the Hon. Vera M. Scanlon, U.S.M.J. The April 14, 2017 application, which

11

authorization for the use of a cell-site simulator device on the telephones assigned numbers (929) 305-4256, (929) 305-4259 and (646) 407-9073. As set forth in the April 14, 2017 application, T-Mobile records reveal that the (929) 305-4256 and (929) 305-4259 numbers are subscribed to "Francisco S Melendez Perez" at 10220 Strong Avenue, Corona, NY 11368 USA. The 7517 number is assigned to subscriber Abel Romero, and there is evidence it is being used by defendant ABEL ROMERO-MELENDEZ, as set forth above. In addition, also for the reasons set forth above, there is probable cause to conclude that the 9073 number is being used by defendant FABIAN REYES-ROJAS.

26.     Data collected pursuant to the April 14, 2017 search warrants established, among other things, that the 9073 number associated with defendant FABIAN REYES-ROJAS was located at a residence in Queens as recently as May 10, 2017.

27.     On July 10, 2017, the government again applied for and received authorization for the collection of Global Positioning System ("GPS") on multiple telephones, including (929) 305-4256, (929) 305-4259, (917) 480-7517 and (646) 407-9073.

---

permitted a 30-day period of collection of GPS and cellular location data as detailed in paragraph 25, also included authorization for the government to delay notification of the collection of such information for a period of 30 days following the period of authorization, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3). The April 21, 2017 application permitted the use of a cell-site simulator on the 7517 number for a period of 30 days, and also included authorization for the government to delay notification of the collection of such information for a period of 30 days following the period of authorization. On June 21, 2017, the government applied for and received authorization from the Hon. Vera M. Scanlon, U.S.M.J., to further delay notice of the collection authorized pursuant to the April 14, 2017 warrants nunc pro tunc for an additional period of 30 days. On June 26, 2017, the government applied for an received authorization from the Hon. Steven M. Gold, U.S.M.J., to further delay notice of the collection authorized pursuant to the April 21 warrant for an additional period of 30 days. In addition, on July 10, 2017, the government applied for and received authorization to further delay notice of the collection authorized pursuant to the April 14, 2017 warrants for 30 more days.

In addition, the government again applied for and received authorization for the use of a cell-site simulator on the telephones assigned numbers (929) 305-4256, (929) 305-4259 and (646) 407-9073. As of July 11, 2017, data collected pursuant to the July 10, 2017 search warrant indicated that the 4256 and 4259 numbers associated with FRANCISCO MELENDEZ-PEREZ were located in Queens, New York. In addition, the GPS data received from T-Mobile revealed that as of July 11, 2017, the 7517 and 9766 numbers associated with ABEL ROMERO-MELENDEZ were located in Charlotte, North Carolina and in the immediate vicinity of Arlington, Virginia, respectively.

WHEREFORE, your deponent respectfully requests that arrest warrants be issued so that the defendants may be dealt with according to law.

Dated:     Brooklyn, New York
           July 11, 2017


Patrick Jochum
Special Agent
Department of Homeland Security
Homeland Security Investigations

Sworn to before me this
11th day of July 2017

S | Robert M. Levy

THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

13