Michael H. Gold
295 Madison Avenue, 12th Flr.
New York, New York
10017
Tel (212) 838-0699

August 6, 2021

Honorable Allyne R. Ross
United States District Court
United States District Judge
225 Cadman Plaza East
Brooklyn New York 11201

*Re: United States v. Francisco Melendez Perez, 17 CR. 434, (ARR)*

Dear Judge Ross:

  I am writing on behalf of my client, Francisco Melendez Perez, regarding his upcoming sentence. We urge the Court to impose an appropriate sentence that balances the gravity of the counts of conviction with the circumstances of his involvement and the extraordinary nature of his incarceration.

  In reaching an appropriate decision at sentencing, the Court must be guided by the facts and circumstances of the particular case. Under *United States v. Booker*, 125 S. Ct. 738 (2005), this Court is no longer bound by the federal sentencing guidelines but must, instead, consider the applicable guideline range as but one factor among several in determining an appropriate sentence. *Kimbrough v. United States*, 128 S.Ct. 554, 574 (2007). The guidelines are only the "starting point and initial benchmark.." *Id., citing Gall v. United States*, 128 S.Ct.586, 596 (2007). It is the sentencing judge who has the advantage of familiarity with the details of the case and can best evaluate the import of the § 3553(a) factors. *Id., Kimbrough*, 128 S.Ct.at 574, citing *Gall,* 128 S.Ct. at 597. The Court may not simply presume that the guideline range is reasonable. *Gall,* at

597. Rather, the Court must make an individualized assessment based on the facts presented.

From its unique vantage point, the Court may conclude that, despite the guidelines, "in a particular case, a within-Guidelines sentence is 'greater than necessary' to accomplish the goals of sentencing . . ." *Kimbrough.*, 128 S.Ct. at 570, *citing* 18 U.S.C. § 3553(a). The not "greater than necessary" language of the federal sentencing statute incorporates the need for the sentence to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense." 18 U.S.C. § 3553(a). Indeed, as the Supreme Court suggested in *Gall*, a sentence of imprisonment may not promote respect for the law if it appears unduly harsh in light of the real conduct and circumstances of the particular case. *Gall*, 128 S.Ct. at 599.

The factors weighing into the imposition of a reasonable sentence include:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines... ;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).

Here, the sentencing factors permit a degree of lenity. Mr. Melendez Perez, who is 27 years old, has been continuously incarcerated at MDC since his arrest on July 12, 2017. While any deprivation of freedom is punitive and difficult, he has served the last 19 months of this time under the most extraordinary restrictions and hardship resulting from the Covid pandemic. He was fundamentally in 23 hour a day lock-up which, combined with his inability to speak English, made even basic communication and human contact highly problematic. He effectively was in isolation for the past 19 months.

His fear of the virus was compounded by his inability to communicate as he was unable to have simple questions answered or be educated as to the latest developments and manners of protection. This combination demonstrably and exponentially heightened the devastation of what would have otherwise been 49 months without seeing the sun or a friendly and communicative face.

The Court is totally aware of the facts of this case. Mr. Melendez Perez was convicted after trial, *inter alia,* of multiple sex trafficking offenses. Taking all the testimony as true, he had minimal or no contact or control over virtually all the victim-witnesses. His involvement was almost exclusively limited to and with the primary accuser against him, Delia. Clearly, she had a personal relationship with Mr. Melendez Perez that transcended and was independent of the charged crimes. They were two children who lived as man and wife, celebrated important occasions and holidays together and had a distinct social relationship as reflected in the many happy pictures at the beach, Rockefeller Center and elsewhere, introduced at trial. While the relationship was clearly warped, and, as found by the jury, criminal, there was, nevertheless, a concurrent bond that was legitimate and reciprocal. As Delia testified, they loved each other.

Mr. Melendez Perez was not accused of any further sex trafficking after Delia left in April, 2014, and, despite the testimony concerning threats, nothing happened either to Delia or her family after she stopped working for him.

While Delia was 15 at or around the timeframe of the indictment, Mr. Melendez Perez was only 16. Two children. Then, as today, Mr. Melendez Perez is poorly educated, possesses few vocational skills and cannot speak English. The evidence at trial suggested that Mr. Melendez Perez was the youngest, at 16, of a family that maintained sex trafficking as a generational business. According to the government, his parents, siblings, uncles and cousins, all older, maintained a continuing structure of forced prostitution that they recruited and bequeathed to him as many families pass on grocery stores or clothing businesses. As the jury determined that Delia was his victim, he, too was undoubtedly a victim of his family upbringing.

We are not comparing or minimizing the distinct and separate victimization and its consequences. The scars undoubtedly run deep. However, one could not have happened without the other. As argued by the government, he was surrounded by role models who were all sex traffickers and their impact cannot be ignored in assessing his own culpability, particularly as a youth. His own participation was seemingly preordained.

Given the environment in which he was raised, where, promoting prostitution was not only accepted but effectively demanded, his behavior leading to the instant offense was predictable and, to an extent, inevitable. He was without education and his moral values were twisted by his upbringing which, at the least, normalized the charged conduct. As a product of a patriarchal and hierarchal family, even after his arrest and incarceration, he was submissive towards his male elders and largely voiceless in the functioning of what was apparently the family business, including the decision to go to trial. While he was convicted of forcing Delia to engage in prostitution, the evidence was also clear that when it came time to teach or train her to act as a prostitute, he demurred to his elder co-defendant. Whether he simply did not know enough himself to teach her or

his ingrained subservience to his family led to the demurral is unclear. We suggest both. Regardless, he did not participate in her training.

He did what was demanded and, as a 16 year old, what he thought was expected of him and continued that subservience leading up to his trial. He was trained from birth to act as he did and, sadly, he did not have the emotional, moral or intellectual strength and maturity to recognize and revolt against the revolting. In this environment, perhaps many, if not most, 16 year old's would have done the same.

During his presentence interview, Mr. Melendez Perez was asked about his childhood and he used the word "regular" to describe his family experience. This honest, yet distorted, description of his youth, that is, his years at home before he came to the US at 16, encapsulates the enormity of his acceptance of the patently abnormal as normal. There is nothing "regular" about women being brought to the family home where they were kidnapped, groomed and forced into prostitution, as the government claims his parents and other family members routinely orchestrated. There is nothing normal about a 15 year old boy bringing his 14 year old girlfriend/victim to the family home where his mother is his ally in tricking her into coming to the US even as he allegedly forced her to have sex with him. Yet, like the son of a Mafia capo regaled with stories of murders, arrests and money schemes described and accepted as normal at dinner time conversation, so too, was Mr. Melendez Perez falsely brainwashed into believing that his life was "regular". That irregularity directly led to his convictions herein.

His family was apparently not unique in its promotion of sex trafficking. As evidenced at trial, the area where he grew up is rife with this conduct. The illegal behaviors were communally reinforced, rather than condemned, and further led to a normalization and acceptability of sex trafficking as a way of life. Again, as a 16 year old, he had not as yet formed the emotional, intellectual or moral strength or independence to break with his family. To do so would realistically have meant abandoning his family without having the requisite resources, skills, life structure or

experience to engage in any legitimate enterprise. He simply had not developed the capacity to make that familial break. Not many can.

In sum, one victim was 15, the other 16. Neither was of the age of legal consent. Despite her oft repeated claims of threats and violence, once Delia left in or about April, 2014, Mr. Melendez Perez neither pursued nor harmed her or her family. From April, 2014 until his arrest in July, 2017, he never engaged in any sex trafficking. There is no claim of other ensnared women or ventures into other forms of pimping. Whether he came to understand and reject his behavior or simply stopped for other reasons, this case marks his only conviction or even arrest.

Nothing preceding is offered to blame others or diminish Mr. Melendez Perez's responsibility for his own conduct. Even at 16, he should have been cognizant of the wrongfulness of his expected behavior and its impact. He alone bears the burden of his guilt and he carries it deeply. However, the events that shaped his thinking and made him vulnerable to impossibly bad choices is relevant in determining his sentence. Most importantly, he recognizes the harm he has caused himself and others and is determined and committed to improving himself. Upon completion of his sentence, he will be deported to Mexico where he will undoubtedly face more hardship as he attempts to establish himself in what will then, to him, be very much a foreign nation.

For the foregoing reasons, we respectfully request that the Court impose a sentence that reflects the seriousness of the charges but incorporates the totality of familial circumstances that led to his participation at an age where his ability to recognize right and wrong was still in its nascent form. We respectfully ask for the minimum sentence available. Further, we join in any applications or arguments by co-defendants applicable to him.

Thank you for consideration of this application.

Respectfully submitted,

Michael H. Gold