Michael H. Gold
295 Madison Avenue, 12th Flr.
New York, New York
10017
Tel (212) 838-0699

November 6, 2021

Honorable Allyne R. Ross
United States District Court
United States District Judge
225 Cadman Plaza East
Brooklyn New York 11201

Re: *United States v. Francisco Melendez Perez, 17 CR. 434, (ARR)*

Dear Judge Ross:

    I am writing on behalf of my client, Francisco Melendez Perez, in reply to the government's sentencing memorandum. We urge the Court to reject the government's request for a 420 month sentence and, instead, as stated in our original sentencing memorandum, "impose an appropriate sentence that balances the gravity of the counts of conviction with the circumstances of his involvement and the extraordinary nature of his incarceration".

    In addition to the nature of the convictions, the government's primary basis for such a draconian sentence request seems to be the defendant's claimed lack of remorse for or acknowledgement of the pain inflicted on the witness victim. They cite as proof of his callousness the factually accurate and record-based conclusion in our memorandum that the "relationship" between Francisco and Delia was "warped" but "legitimate and reciprocal", as if this statement of evidentiary fact somehow denies or disclaims any awareness of the impact of the crimes of conviction. That assertion is a distortion of what we submitted and argue and should be wholly rejected.

The full quotation of the description of the relationship apparently needs repeating.

"Clearly, she had a personal relationship with Mr. Melendez Perez that ***transcended*** and was ***independent of the charged crimes***. They were two children who lived as man and wife, celebrated important occasions and holidays together and had a distinct social relationship as reflected in the many happy pictures at the beach, Rockefeller Center and elsewhere, introduced at trial. While the relationship was clearly warped, and, ***as found by the jury, criminal***, there was, nevertheless, a concurrent bond that was legitimate and reciprocal. As Delia testified, ***they loved each other***." (Def. sentence memo p. 3, *emphasis* added).

Nowhere therein do we deny culpability or assail Delia. Given the trial testimony, this conclusion is incontrovertible and, frankly, uncontroversial. To say that they were in a warped relationship that was reciprocal and legitimate is not an unfeeling rejection of her victimhood; it's a statement of fact based upon Delia's testimony that the Court, we believe, should consider as part of the context of his involvement and in imposing an appropriate sentence. They loved each other.

Again, we maintain that the warped nature of their relationship mirrors the dichotomy of a perverse upbringing that, on the one hand, encouraged the dehumanization of Delia for the *business* of prostitution, but, also, allowed him to love her, as she did him, as normal people do. It was not and is not offered as a defense. It is an explanation of circumstances that causally resulted in the conviction and merits, we respectfully submit, the Court's full consideration.

The government finds support in *United States v. Broxmeyer, 699 F.3d 265, 295 (2d Cir. 2012)*, for its excessive request that sentencing should be enhanced because of a proclaimed lack of remorse or disclaimed sense of responsibility. The comparison with *Broxmeyer,* at least as to Mr. Melendez Perez, is thoroughly misplaced.

In *Broxmeyer*, the defendant at sentencing, after trial, 1) specifically and affirmatively denied or minimized his intent or involvement in the commission of any criminal conduct involving sex with multiple minors who testified at trial; 2) claimed to be "joking around" when describing his many and criminal sexual entreaties to minors, including sending pornographic pictures of his genitals to numerous minors and requesting and receiving like pictures in return; 3) called his accusers liars; 4) suggested that his sex with teenage students was merely "stupid", not criminal, and 5) only expressed sorrow for himself that the charges were wrongly brought against him while denying even the existence of his underage victims. Contrary to the government's attempted comparison, nothing of the like is advanced here.

In our earlier memorandum, we specifically and directly refer to Delia as a victim and made great efforts to acknowledge, yet distinguish, the deep "scars" of her victimization from the similarly destructive victimization of Francisco by his family. We did not call her a liar, deny the gravity of the crimes of conviction, minimize his conduct or otherwise suggest anything that could be interpreted as a reflection of disrespect for or lack of understanding of the impact of the behavior described in the underlying testimony at trial. *Broxmeyer* is inapposite on any and every level.

Our point remains that the evidence at trial, taken as true, showed a dual track of independent and distinct, yet ultimately merged, victimization; Delia by Francisco and Francisco by his family. According to the testimony, he was trained, expected and required to do what he did and the jury so found in its verdict. This is not a comparison of victimization or denial of pain or harm. It is merely an expression of the unmistakable linear connection of one to the other. Delia's victimization could not have happened without Francisco's.

Without passing judgement or agreeing with its content, a simple comparison between what the government wrote in its memorandum about Abel Romero Melendez with what they advanced about Mr. Melendez Perez highlights the inapplicability and unfairness of seeking identical 35-year sentences for each. ( Gov't memo 40-46). Their 1)

ages; 2) role; 3) scope and degree of culpability; 4) positions within the family organization, and, 5) their description of victim testimony are fundamentally distinct, even according to the government. Seeking identical sentences for markedly disparate behavior by very different defendants arising from widely dissimilar circumstances is insupportable.

The defendant's sentencing position in the case is much more aligned with Fabian Reyes Rojas. He, too, is guilty of forcing a single woman to prostitute herself. He engaged in repeated acts of violence and forced his victim, Daisy, to have an unwanted abortion and then compelled her to work as a prostitute to pay for the abortion. No such claim of forced abortion is advanced against Mr. Melendez Perez. Unlike Mr. Melendez Perez, he pleaded guilty before trial and earned the 3 point deduction that Mr. Melendez Perez forfeited by going to trial. In itself, this adds years to his guideline calculation. Nevertheless, the government agrees to the guideline calculation for Mr. Reyes Perez and requests the imposition of the statutory minimum of 15 years. They ask the Court to more than double that sentence for Mr. Melendez Perez's decision to go to trial.

While this case will be appealed and any affirmative admission of guilt or assertion of acceptance of responsibility would undoubtedly highlight the government's brief in opposition, the undisputed thrust of the sentencing memorandum was that, as alleged at trial, as a 16-year-old growing up where prostitution is legal, in a family and town of pimps, it was almost preordained that he would follow suit and do what the jury found that he did. We further noted that after Delia left him, there were no further accusations or claims of similar misconduct, which could be interpreted as an acknowledgement that his conduct was wrong. At the least, it demonstrates that this was not a career or life choice that the Court need worry will be repeated.

A sentence in the range of 20 years permanently removes him from his family's influence and provides an unmistakably harsh and serious punishment. The past 4¼ years of incarceration has already yielded an insight and understanding of the catastrophic failures of his upbringing and how it directly led him to this Court. While we did not

expressly admit guilt or acknowledge that he was justly found guilty at trial, there is nothing even remotely close to the outright attacks on the complainants, verdict and charging instruments that mark *Broxmeyer*.

We respectfully suggest that a 35-year sentence for crimes that began at the defendant's age 16 and ended while he was 19, is inappropriate and disproportionate. We are not asking for probation or less than a double-digit sentence. A sentence in the 20-year range is a loud deterrence for others similarly situated and amply punishes him for the crimes of conviction. He is now 27 years old and has been in custody for over 4 years under the harshest of conditions and during the worst pandemic in US history. A 20-year sentence to a 27-year-old is devastating and to spend roughly 50% of his life in jail is anything but lenient. Murderers serve less.

It is always difficult and rarely illuminating to compare cases and sentences. Either side can point to innumerable instances in their favor. However, for context, one outrageous example of individual degeneracy that captured the public eye is illustrative.

Dr. Larry Nassar, the former doctor/athletic trainer for the Michigan State University and women's US Olympic Gymnastics team, was sentenced to 40-175 years in Michigan state court after being found to have molested 265 identifiable young girls, including a 6-year-old. According to the sentencing Judge, an infinite number of other young girls were equally molested and abused but could not be identified. This sentence was imposed concurrently with a conviction in another Michigan state case where over 150 victims, mostly minor girls, testified at his sentence hearing to his decades of abuse committed under the guise of medical examinations. There, too, he was sentenced to 40-175 years. These sentences were concurrent to each other which theoretically made him eligible for parole after 40 years under Michigan law. A 60-year federal sentence was imposed consecutively to the state time arising from his conviction of possessing over 37,000 images of child pornography, including video of him molesting an underage girl. By any objective standard, Mr. Melendez Perez's misconduct pales in comparison yet the sentencing request is consistent with the state sentences imposed on Nassar.

As well, in this Court, 35-year sentences are rarely imposed and, rightfully, only under the most egregious of circumstances. Single murder cases are frequently resolved with far less periods of incarceration. Notably, the Department of Justice *as a matter of policy* will authorize, offer and permit the entry of guilty pleas in gang cases involving *multiple* homicides only if the defendant agrees to accept a sentence of at least 35 years. The reasoning is clear and understandable. Homicide is a singular act of depravity. Multiple homicides require the most serious of sentencing consequences. Therefore, a floor of 35 years is necessary and appropriate.

Surely, whatever the government or Court thinks of Mr. Melendez Perez, we can agree that his conduct was societally less appalling, offensive or despicable than that of even a one time murderer, let alone serial killer. Yet, the government is asking the Court to impose the same 35-year sentence it readily offers and accepts as a matter of policy in multiple murder cases.

To be clear, once again, in making this point we do not minimize, trivialize or otherwise diminish the conduct of conviction. We offer the comparisons for context and in support of a sentence that reflects fairness not only within the confines of the case, but, also, within the overall scheme of 3553 sentencing considerations. The seriousness of this case is self-evident and is not belittled or demeaned by also acknowledging it is less so than murder. Respectfully, the Court should not treat them equivalently.

The Court is not being asked to make a binary choice of probation or 35 years. The nature of this case warrants a significant sentence and we acknowledge a 20-year sentence is justified. Without more, that acknowledgement completely negates any argument that the defendant denies or misapprehends the gravity of his conviction.

A 35-year sentence, however, is more appropriate, as recognized and codified by the Department, for a multiple killer or someone like Nassar who provably plagued and

molested hundreds, if not thousands, of minors over a period of decades. The instant case has a far different profile. Simply put, he is neither a murderer nor Nassar.

Unlike his trial co-defendants, Mr. Melendez Perez is fundamentally convicted of pimping a single victim, Delia. He did not "run" other victims before or after her. His crimes of conviction spanned 3 years, not 3 decades. This was not his life's work and the Court can take notice that in the years after Delia walked away from him, he never engaged in this or other criminal conduct. He does not call anyone a liar or minimize the charged conduct. He is half the age of his co-defendant relatives, from whom he took direction and instruction, including the decision to go to trial, had less evidentiary culpability, was never alleged to be a decision maker within the charged organization and, while clearly responsible for his own conduct, he, too, was clearly a child when it began.

In order to finally dispel any claim that he harbors *Broxmeyer* thoughts and beliefs that might justify such an overreaching sentence, I end by repeating the concluding words from our first submission:

> "Nothing preceding is offered to blame others or diminish Mr. Melendez Perez's responsibility for his own conduct. Even at 16, he should have been cognizant of the wrongfulness of his expected behavior and its impact. He alone bears the burden of his guilt and he carries it deeply. However, the events that shaped his thinking and made him vulnerable to impossibly bad choices is relevant in determining his sentence. Most importantly, he recognizes the harm he has caused himself and others and is determined and committed to improving himself.

> For the foregoing reasons we [again] respectfully request that the Court impose a sentence that reflects the seriousness of the charges but incorporates the totality of familial circumstances that led to his participation at an age where his ability to recognize right and wrong was still in its nascent form. We respectfully ask for

the minimum sentence available. Further, we join in any applications or arguments by co-defendants applicable to him."

Thank you for your consideration of this application.

                                               Respectfully submitted,

                                               Michael H. Gold